# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
### WESTERN DIVISION

RESHON TOLLIVER,                    )
                                    )
    Movant,                         )
                                    )
                Cv. No. 2:21-cv-02258-SHL-atc
v.                                  )   Cr. No. 2:17-cr-20060-SHL-16
                                    )
UNITED STATES OF AMERICA,           )
                                    )
    Respondent.                     )

---

## ORDER DENYING MOTION PURSUANT TO 28 U.S.C. § 2255, DENYING A CERTIFICATE OF APPEALABILITY, CERTIFYING THAT AN APPEAL WOULD NOT BE TAKEN IN GOOD FAITH, AND DENYING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL

---

Before the Court is the Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct a Sentence by a Person in Federal Custody ("§ 2255 Motion") filed by pro se Movant Reshon Tolliver, Bureau of Prisons register number 77079-097, an inmate at the United States Penitentiary in Leavenworth, Kansas, when he filed this Motion on April 26, 2021.[1] (ECF No. 1.) After the Court directed Defendant to respond (ECF No. 5), the Government filed its answer on August 2, 2021, which included the Declaration of Attorney Stephen R. Leffler, Former Counsel for Reshon Tolliver, Pursuant to 28 U.S.C. § 1746 (ECF Nos. 10 & 10-1). On August

---

[1] Tolliver was released from custody on May 25, 2022, while his petition was pending. https://www.bop.gov/inmateloc/ (click "Find By Number"; then type "77079-097"; then click search). Because Tolliver's sentence included a term of supervised release, his petition is not moot, as he is still "in custody" for purposes of § 2255. See United States v. Sferrazza, 645 F. App'x 399, 404–05 (6th Cir. 2016); United States v. Zack, 173 F.3d 431 (6th Cir. 1999) ("A defendant serving a term of supervised release is 'in custody' for the purposes of § 2255.").

20, 2021, the Court granted Tolliver a thirty-day extension of time to file his response to the answer.  (ECF No. 12.)  Tolliver requested a second copy of the Government's answer to the § 2255 Motion after it went "missing," and requested another thirty-day extension to be triggered by the mailing.  (ECF No. 13.)  On September 1, 2021, the Clerk's office mailed a copy of the Government's answer to Tolliver.  Tolliver never responded to that answer and his time to do so has long since passed.  For the reasons stated below, the Court **DENIES** the § 2255 Motion.

<u>**BACKGROUND AND PROCEDURAL HISTORY**</u>

### I.      Criminal Case No. 2:17-cr-20060-SHL-16

On November 17, 2017, a federal grand jury in the Western District of Tennessee returned a fourteen-count second superseding indictment against Tolliver and sixteen co-defendants.  (Criminal ("Cr.") ECF No. 320.)  Tolliver was named in Counts 2 and 14.  Count 2 charged nine Defendants with conspiring to distribute and possess with intent to distribute marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and 846.  (<u>Id.</u> at PageID 829–832.)  Count 14 charged seven Defendants with conspiring to commit money laundering offenses in violation of 18 U.S.C. § 1956.  (<u>Id.</u> at PageID 837–55.)  The second superseding indictment also included a criminal forfeiture notice seeking a money judgment of $7,000,000.  (<u>Id.</u> at PageID 855–58.)

The essence of the conspiracy was that Larry Broadnax, a drug dealer based in Memphis and one of Tolliver's co-Defendants, would purchase marijuana from Leo Bibbs III, a dealer in California and also a co-Defendant, and would use various means to ship it to addresses in and around Memphis.  (ECF No. 10 at PageID 48.)  Broadnax sent money to Bibbs through the mails, by courier, and through deposits into banks that had locations in both California and Tennessee.  (<u>Id.</u>)

At Tolliver's trial, there was testimony that he mailed packages on behalf of Bibbs and assisted in the collection of money that was deposited into the bank accounts at the center of the money laundering conspiracy.  (Id. at PageID 48–49.)  A jury convicted Tolliver of Count 14, the conspiracy to commit money laundering, but found him not guilty of Count 2, the marijuana conspiracy.  (Cr. ECF No. 592.)  The Court sentenced him to seventy months imprisonment and a money judgment of $515,913, which represented the aggregate amount of the proceeds from the money laundering conspiracy in Count 14.  (Cr. ECF No. 680 at PageID 2711, 2717.)  Tolliver also was sentenced to a three-year term of supervised release.  (See Cr. ECF No. 680 at PageID 2712.)

Tolliver appealed his conviction to the Sixth Circuit Court of Appeals arguing three bases: a violation of the Speedy Trial Act ("STA"), insufficient evidence to convict, and error in calculating the forfeiture amount.  United States v. Tolliver, 949 F.3d 244, 246 (6th Cir. 2020).  The court denied his appeal on each ground.  See id.

## II.     Tolliver's § 2255 Motion

In his § 2255 Motion, Tolliver argues that he is entitled to relief from his conviction based on the alleged ineffective assistance of counsel of his trial lawyer, Stephen Leffler.  (ECF No. 1.)  Tolliver asserts three separate areas in which Leffler was ineffective.  First, he argues that counsel failed to renew his Rule 29 motion at the close of all evidence, which caused the Sixth Circuit to apply a heightened standard of review to his appeal.  Second, Tolliver asserts that, at sentencing, counsel failed to object to the Court's determination that Tolliver's April 2017 gambling proceeds and the $40,000 delivered to him by a co-conspirator were properly deemed assets to be forfeited.  Finally, Tolliver asserts that counsel was ineffective through his failure to claim a violation of the STA.

## LEGAL STANDARD

Pursuant to 28 U.S.C. § 2255(a),

> [a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

"A prisoner seeking relief under 28 U.S.C. § 2255 must allege either (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid."  Short v. United States, 471 F.3d 686, 691 (6th Cir. 2006) (internal quotation marks omitted).  Movant has the burden of proving that he is entitled to relief by a preponderance of the evidence.  Pough v. United States, 442 F.3d 959, 964 (6th Cir. 2006).

A claim that ineffective assistance of counsel has deprived a movant of his Sixth Amendment right to counsel is controlled by the standards stated in Strickland v. Washington, 466 U.S. 668, 687 (1984), which require a showing that "counsel's performance was deficient" and that "the deficient performance prejudiced the defense."  To demonstrate deficient performance, a movant must demonstrate that "counsel's representation fell below an objective standard of reasonableness."  Id. at 688.

> A court considering a claim of ineffective assistance must apply a strong presumption that counsel's representation was within the wide range of reasonable professional assistance.  The challenger's burden is to show that counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment.

Harrington v. Richter, 562 U.S. 86, 104 (2011) (internal quotation marks and citations omitted).

To demonstrate prejudice, a prisoner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. "It is not enough to show that the errors had some conceivable effect on the outcome of the proceeding. Counsel's errors must be so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Harrington, 562 U.S. at 104 (internal quotation marks and citation omitted); see also id. at 111–12 ("In assessing prejudice under Strickland, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. . . . The likelihood of a different result must be substantial, not just conceivable.") (citations omitted); Wong v. Belmontes, 558 U.S. 15, 27 (2009) (per curiam) ("But Strickland does not require the State to 'rule out' [a more favorable outcome] to prevail. Rather, Strickland places the burden on the defendant, not the State, to show a 'reasonable probability' that the result would have been different.").

## ANALYSIS

### I.    Failure to Renew Rule 29 Motion

Tolliver first asserts that Leffler's assistance was ineffective because, at the close of evidence at trial, Leffler failed to renew his motion under Federal Rule of Criminal Procedure 29. Under that rule, "[a]fter the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Cr. P. 29(a).

Tolliver acknowledges that Leffler moved for acquittal under Rule 29 at the close of the prosecution's case in chief. (ECF No. 1-1 at PageID 18.) However, he argues that, by failing to

again move for acquittal at the close of all evidence, Leffler's counsel was ineffective.  Tolliver appears to assert that, had Leffler renewed his Rule 29 motion at the close of all the evidence, the Sixth Circuit would have evaluated his claim under a more forgiving sufficiency of the evidence standard.

The Government counters that Tolliver's counsel was not required to renew his Rule 29 motion after Tolliver put on no proof following the Court's initial Rule 29 denial.  It is clear in the Sixth Circuit that, when a defendant makes a Rule 29 motion at the close of the Government's proof, but fails to renew the motion <u>after</u> he presents evidence, he "is entitled to reversal of the district court's denial of his Rule 29 motion only if this ruling resulted in a 'manifest miscarriage of justice.'"  <u>United States v. Dunnican</u>, 961 F.3d 859, 877 (6th Cir. 2020) (citing <u>United States v. Faymore</u>, 736 F.2d 328, 334 (6th Cir. 1984).)  A "manifest miscarriage of justice'. . . exists only if the record is 'devoid of evidence pointing to guilt.'"  <u>United States v. Clark</u>, 294 F.3d 791, 793 (6th Cir. 2002) (quoting <u>United States v. Price</u>, 134 F.3d 340, 350 (6th Cir.), <u>cert. denied</u>, 525 U.S. 845 (1998) (cleaned up).

It is not as clear, however, if the heightened "manifest miscarriage of justice" standard applies if a defendant does not renew his motion for acquittal after putting on no proof of his own.  Defendant cites to authorities, including a case from a district court in the Sixth Circuit, that stand for the proposition that a subsequent motion for acquittal in such circumstances is an unnecessary empty ritual.  (ECF No. 10 at PageID 61–62 (citing 7 Wright & Miller, <u>Federal Criminal Practice and Procedure</u> §§ 463, 464 (4th ed. 2021); <u>United States v. Turner</u>, 490 F. Supp. 583, 589 (E.D. Mich. 1979), <u>aff'd</u>, 633 F.2d 219 (6th Cir. 1980)).  Other cases from the Sixth Circuit imply the same.  <u>See</u> <u>United States v. Price</u>, 134 F.3d 340, 350 (6th Cir. 1998) ("[W]hen the defendant moves for judgment of acquittal at the close of the government's case-

in-chief, <u>and defense evidence is thereafter presented</u> but the defendant fails to renew the motion at the close of all of the evidence, he waives objection to the denial of his earlier motion, absent a showing of a manifest miscarriage of justice.") (emphasis added).

Such an approach makes sense, as the second motion in these scenarios would be based on precisely the same proof the court relied upon to deny the original motion for judgment of acquittal. However, there is some authority in the Sixth Circuit that requires the motion to be re-asserted in these circumstances. <u>See</u> <u>United States v. Love</u>, 553 F. App'x 548, 551 (6th Cir. 2014) (finding that a defendant who did not renew her Rule 29 motion at the close of evidence waived her sufficiency claims even though she did not put on proof after her initial Rule 29 motion was denied).

But, regardless of whether Tolliver's counsel was required to re-assert his Rule 29 motion, his failure to do so does not constitute ineffective assistance of counsel for multiple reasons. First, a failure to make a motion that has no reasonable probability of success does not constitute ineffective assistance of counsel. <u>See</u> <u>Corral v. U.S.</u>, 562 F. App'x 399 (6th Cir. 2014) (explaining that "counsel's failure to make a meritless claim fails both prongs of the <u>Strickland</u> test"). The Court's denial of Tolliver's initial Rule 29 motion means that the same motion, made moments later, based on no additional proof, would not have had a reasonable probability of success.

Second, in deciding Tolliver's appeal, the Sixth Circuit did not apply the heightened manifest miscarriage of injustice standard of review that Tolliver suggests. As the court explained, in evaluating the sufficiency of the evidence, it took "the evidence in the light most favorable to the prosecution and ask[ed] whether <u>any</u> rational trier of fact could have found Tolliver guilty." <u>United States v. Tolliver</u>, 949 F.3d 244, 247 (6th Cir. 2020). The court then

evaluated the type and amount of evidence the Government presented and concluded that, "[b]ased on the evidence at trial, a reasonable factfinder could find that Tolliver conspired to launder money." Id. at 248.

There is no evidence in the record that shows that Leffler's performance was deficient in failing to move under Rule 29 a second time, or that any such deficiency prejudiced Tolliver's defense. Tolliver is not entitled to any relief based on this argument.

## II.     Failure to Exclude Gambling Proceeds from Forfeiture

Tolliver's second basis for claiming ineffective assistance of counsel is that Leffler failed to object to the Court's determination that Tolliver's gambling proceeds were assets that were subject to forfeiture. The bulk of his arguments as to this claim appear to deal with the sufficiency of the evidence and challenges to the Court's findings as to whether his legal gambling proceeds and a $40,000 payment from one of his co-Defendants could be factored into the forfeiture calculation. Although Tolliver's challenges to the forfeiture order and money judgment are cognizable under § 2255 to the extent he argues ineffective assistance of counsel, see United States v. Herring, No. CR 14-08-GFVT-CJS, 2020 WL 10054320, at *11 (E.D. Ky. Apr. 20, 2020), report and recommendation adopted, No. 614CR00008GFVTCJS, 2021 WL 2134323 (E.D. Ky. May 26, 2021), the substance of his claim is without merit.

Tolliver runs into two problems in alleging ineffective assistance as to these claims. First, as the Government points out, the Sixth Circuit addressed the substance of Tolliver's argument in denying his appeal, and determined that the Government met its burden of supporting the "forfeiture by a preponderance of the evidence" and "show[ed] a nexus between the property and the crime." Tolliver, 949 F.3d at 249. So, the Sixth Circuit found that, not only

was this Court correct in concluding that it was more likely than not that Tolliver gambled with

laundered money, but the Sixth Circuit also concluded that this Court:

> did not err in adding the $40,000 based on testimony at sentencing.  There, the FBI
> agent said that he spoke with a co-conspirator who said she delivered cash to
> Tolliver on more than one occasion (plus the bank transfers already accounted for).
> And wiretap discussions showed that the average amount of cash she delivered was
> $40,000.  The district court found this evidence reliable.  But in an abundance of
> caution, it only added $40,000 to the forfeiture calculation, even though the co-
> conspirator said she delivered money to Tolliver more than once.  Here again, a
> preponderance of the evidence shows that Tolliver would have received <u>at least</u>
> $40,000 in cash as part of the money laundering conspiracy.

<u>Id.</u> at 249–50.

Even more importantly as to the ineffective assistance claim, this Court arrived at its

forfeiture-related conclusions over Leffler's explicit objections.  In Leffler's response to the

Government's Supplemental Position with Respect to Sentencing Factors, he argued that the

Government could not show "how much of the cash Tolliver walked into the casino with was

cash attributable to the money-laundering scheme and how much of the cash was derived from

other sources."  (Cr. ECF No. 672 at PageID 2689.)  Leffler argued that the money subject to

forfeiture should have been capped at $284,310.00, which were the funds Tolliver received as

part of the money laundering scheme.  (<u>Id.</u> at PageID 2688.)  Then, at Tolliver's sentencing,

Leffler challenged the Government's witness's conclusions as to the source of the funds that the

Court ultimately determined were subject to forfeiture.  (Cr. ECF No. 700 at PageID 3268.)[2]

---

[2] In his Declaration, Leffler expounds on these points, declaring that he "objected to the
government's inclusion of the gambling proceeds in the forfeiture determination and argued
against it," and credited his arguments with the Court's decision to decrease the money to be
included in the forfeiture calculation.  (ECF No. 10-1 at PageID 73–74.)  Whether the Court was
persuaded by Leffler's arguments or something else, it is clear that he made them, contrary to
Tolliver's assertions.

In other words, Leffler did exactly what Tolliver complains he did not do.  Where, as here, a petitioner's claims of ineffective assistance of counsel are "belied by the record," he cannot establish deficient performance by his counsel.  See Everett v. Leibach, No. 2:15-cv-02099-MSN-tmp, 2019 WL 13275820, at *14 (W.D. Tenn. Nov. 18, 2019) (quoting Goff v. Bagley, 601 F.3d 445, 464 n.7 (6th Cir. 2010)).  Tolliver's second basis for arguing ineffective assistance of counsel is baseless.

### III.    Failure to Claim an STA Violation

Lastly, Tolliver argues that his counsel's representation was ineffective because he failed to move to dismiss the second superseding indictment based on a violation of the STA.  (ECF No. 1-1 at PageID 23.)

The STA provides that the trial of a defendant who is charged in an information or indictment and who pleads not guilty "shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs."  18 U.S.C. § 3161(c)(1).  The STA allows for certain exclusions when "computing the time within which the trial of any such offense must commence."  18 U.S.C. § 3161(h).

Tolliver asserts that "[t]here was no doubt that [he] invoked his right to a Speedy Trial," and that "the court reco[g]nized it on at least two (2) occasions."  (ECF No. 1-1 at PageID 24.) He acknowledges that certain exclusions of time are allowed under § 3161(h), acknowledges that he stipulated to certain exclusions of time, but still asserts that he did not receive a timely trial under the STA.  His argument is without foundation, as, factoring in excludable time, the seventy days did not expire before his trial began on June 4, 2018.

The STA period began to run on January 30, 2018, upon Tolliver's initial appearance before Magistrate Judge Tu M. Pham.  (Cr. ECF No. 410.)  There were 125 days between that day and the start of the trial.  During that time, the Court excluded time for various reasons, which resulted in there being fifty-five countable days by the Government's calculations.  (See ECF No. 10 at PageID 67–69.)  The Court finds those calculations correct.

At an April 26 hearing, Tolliver objected when the Court excluded time from April 27 through June 8, based mostly on the undersigned's unavailability due to medical treatments, but also considering the unavailability of a Government witness.  (See Cr. ECF No. 731 at PageID 3472.)  That time was appropriately excludable under 18 U.S.C. § 3161(h)(7)(A) and (B)(i), which allows for a judge to grant a continuance on her own motion if "the failure to grant such a continuance in the proceeding would be likely to make a continuation of such proceeding impossible."[3]

However, even if that time were not properly excludable, there would have only been thirteen days added to the total number of countable days under the STA, resulting in sixty-eight countable days between Tolliver's initial appearance and the start of the trial.  That does not amount to a STA violation and, as stated above, because any such a motion filed by Leffler on these grounds would have had no reasonable probability of success, his failure to so move does not constitute ineffective assistance.  See Corral v. U.S., 562 F. App'x 399 (6th Cir. 2014).

---

[3] Tolliver asserts that "the unavailability of a law enforcement witness isn't one of the exceptions" for excluding time under the STA.  (ECF No. 1-1 at PageID 25.)  On the contrary, 18 U.S.C. § 3161(h)(3)(A) provides an exclusion for "[a]ny period of delay resulting from the absence or unavailability of the defendant or an essential witness."  A witness is "considered unavailable whenever his whereabouts are known but his presence for trial cannot be obtained by due diligence or he resists appearing at or being returned for trial." 18 U.S.C. § 3161(h)(3)(B).

Moreover, as Leffler's declaration indicates, although he objected to continuances on Tolliver's behalf during the pendency of the case, he strategically decided not to file a motion to dismiss under the STA as, if he "had filed a motion to dismiss for a violation of the Speedy Trial Act, the dismissal would likely have been without prejudice, meaning the case would not go away and that the government could refile the charges."  (ECF No. 10-1 at PageID 74.)  Because such a dismissal "would have caused a further delay of the trial date" and "Mr. Tolliver's desire was to try the case as soon as possible, . . . a motion to dismiss did not make sense to [Leffler]." (Id. at PageID 74–75.)

The Court presumes "that defense counsel has rendered adequate assistance by exercising reasonable professional judgment and sound trial strategy," which "includes the decision not to file certain motions if, after investigation, doing so would not be necessary or advantageous." United States v. Hinds, 2 F. App'x 420, 423 (6th Cir. 2001) (citation omitted).  Leffler's decision to not seek relief under the STA was within the wide range of reasonable professional assistance. See Harrington, 562 U.S. at 104.

Moreover, as Leffler suggests in his declaration, even if that approach amounted to unprofessional error, there is not a reasonable probability that the result of the proceeding would have been different but for that decision, as Strickland requires for a finding of ineffective assistance.  The sanction for an STA violation is that the case should "be dismissed or otherwise dropped."  18 U.S.C. § 3162(a)(1).  But it is up to the Court to consider whether such a dismissal is with or without prejudice after analyzing the following factors: "the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice."  Id. Ultimately, Tolliver has not only failed to demonstrate that his counsel's performance was

12

deficient, but he also has failed to show that he was prejudiced by his counsel's performance, assuming it were deficient, as he does not explain why under these circumstances a dismissal under the STA would have been made with prejudice.  Therefore, the third basis for Tolliver's § 2255 challenge satisfies neither <u>Strickland</u> prong, and thus provides him no basis for relief.

Tolliver's motion, together with the files and record in this case, conclusively show that he is entitled to no relief.  28 U.S.C. § 2255(b).  His conviction and sentence are valid and, therefore, his § 2255 Motion is **DENIED**.  Judgment shall be entered for the United States.

## <u>APPEAL ISSUES</u>

Twenty-eight U.S.C. § 2253(a) requires the district court to evaluate the appealability of its decision denying a § 2255 motion and to issue a certificate of appealability ("COA") "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2); <u>see also</u> Fed. R. App. P. 22(b).  The COA must indicate the specific issue or issues that satisfy the required showing.  28 U.S.C. §§ 2253(c)(2) & (3).  No § 2255 movant may appeal without this certificate.

A "substantial showing" is made when the movant demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 336 (2003) (internal quotation marks omitted).

> Where a district court has rejected a constitutional claim on the merits, the showing required to satisfy § 2253(c) is straightforward:  The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. . . .  When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. . . .

Slack v. McDaniel, 529 U.S. 473, 484 (2000).  "In short, a court should not grant a certificate without some substantial reason to think that the denial of relief might be incorrect."  Moody v. United States, 958 F.3d 485, 488 (6th Cir. 2020).  "To put it simply, a claim does not merit a certificate unless every independent reason to deny the claim is reasonably debatable."  Id.; see also id. ("Again, a certificate is improper if *any* outcome-determinative issue is not reasonably debatable.").

The issues raised in Tolliver's § 2255 Motion are meritless for the reasons previously stated.  Because any appeal by him on the issues raised does not deserve attention, the Court **DENIES** a certificate of appealability.

The Sixth Circuit has held that the Prison Litigation Reform Act of 1995, 28 U.S.C. §§ 1915(a)–(b), does not apply to appeals of orders denying § 2255 motions.  Kincade v. Sparkman, 117 F.3d 949, 951 (6th Cir. 1997).  Rather, to appeal in forma pauperis in a § 2255 case, and thereby avoid the appellate filing fee required by 28 U.S.C. §§ 1913 and 1917, the prisoner must obtain pauper status pursuant to Federal Rule of Appellate Procedure 24(a).  Kincade, 117 F.3d at 952.  Rule 24(a) provides that a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit.  Fed. R. App. P. 24(a)(1).  However, Rule 24(a) also provides that if the district court certifies that an appeal would not be taken in good faith, or otherwise denies leave to appeal in forma pauperis, the prisoner must file her motion to proceed in forma pauperis in the appellate court.  *See* Fed. R. App. P. 24(a) (4)–(5).

In this case, for the same reasons the Court denies a certificate of appealability, the Court determines that any appeal would not be taken in good faith.  It is therefore **CERTIFIED**,

pursuant to Federal Rule of Appellate Procedure 24(a), that any appeal in this matter would not be taken in good faith.  Leave to appeal in forma pauperis is **DENIED**.[4]

   **IT IS SO ORDERED**, this 16th day of September, 2024.

         s/ Sheryl H. Lipman     
         SHERYL H. LIPMAN
         CHIEF UNITED STATES DISTRICT JUDGE

---

[4] If Tolliver files a notice of appeal, he must also pay the full $605 appellate filing fee or file a motion to proceed in forma pauperis and supporting affidavit in the Sixth Circuit Court of Appeals within 30 days.